ACCEPTED
12-14-00302-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
4/8/2015 2:16:51 PM
CATHY LUSK
CLERK

NO. 12-14-00302-CV

IN THE TWELFTH COURT OF APPEALS
TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
4/8/2015 2:16:51 PM
CATHY S. LUSK
Clerk

CORRINE AUGUSTINE NICHOLS HILL SHEARER

*Appellant*

v.

DAVID SHEARER, INDIVIDUALLY AND AS THE INDEPENDENT
ADMINISTRATOR OF THE ESTATE OF JOHN WILLIAM SHEARER, III

*Appellee*

Appeal from the County Court at Law No. 2
Gregg County, Texas

**BRIEF FOR APPELLEE**

Carson R. Runge
Attorney for David Shearer
Sloan, Bagley, Hatcher & Perry Law Firm
101 East Whaley St., Longview, TX 75601
Phone: 903-757.7000 ext.213
Fax: 903-757-7574
State Bar Number: 24059262

**Oral Argument Requested**

## Identity of Parties and Counsel

| | |
|---|---|
| **Appellant/Defendant:** | Corrine Augustine Nichols Hill Shearer |
| **Appellant's Counsel:** | J. Chad Parker<br>State Bar No: 15489000<br>cparker@theparkerfirm.net<br><br>Forrest F. Mays<br>State Bar No: 24072228<br>fmays@theparkerfirm.net<br><br>The Parker Firm, P.C.<br>3808 Old Jacksonville Rd.<br>Tyler, Texas 75701<br>(903) 595-4541 - telephone<br>(903) 595-2864 - facsimile |
| **Appellee/Plaintiff:** | David Shearer, Individually, and as Independent Administrator of the Estate of John William Shearer, III |
| **Appellee's Counsel:** | Carson Runge<br>State Bar No. 24059262<br>crunge@sloanfirm.com<br><br>Sloan, Bagley, Hatcher & Perry<br>101 East Whaley Street<br>Longview, Texas 75601<br>State Bar No. 24059262<br>Phone: 903-757-7000 ext.213<br>Fax: 903-757-7574 |

i

# Table of Contents

Identity of Parties and Counsel.................................................................................i

Table of Contents ................................................................................................ ii

Table of Authorities ........................................................................................... iv

Statement of the case .........................................................................................x

Issues Presented ................................................................................................x

Standard of Review............................................................................................ xi

Statement of Facts .............................................................................................1

Summary of the Argument..................................................................................11

Argument ..........................................................................................................15

    I. Corrine Shearer Failed to Preserve Error by Failing to Request the Inclusion of, and Failing to Object to the Omission of, the Additional Three Factors that Form the Foundation of Her Legal and Factual Sufficiency Challenges Regarding the Existence of an Informal Fiduciary Duty. .................................................................................15

    II. There Is Legally and Factually Sufficient Evidence Supporting the Jury's Unanimous Finding of the Existence of An Informal Fiduciary Relationship Under the Court's Charge.................................................21

    III. Corrine Shearer's Legal and Factual Sufficiency Points of Error are Irrelevant Because the Factors Raised by Corrine Shearer in Her Appeal are Not Required for the Creation of, or the Existence of, an Informal Fiduciary Duty.........................................................................29

IV. Alternatively, if This Court Holds that these Three Factors are Required for the Creation of an Informal Fiduciary Duty, There is Sufficient Evidence to Support the Trial Court's Judgment. ................34

V. Intentional Infliction of Emotional Distress Represents the Only Available Cause of Action for David to Recover for Corrine Shearer's Wrongful Disposition of John Shearer's Ashes.......................................37

Prayer ....................................................................................................41

Certificate of Compliance ...................................................................42

Certificate of Service ...........................................................................43

iii

# Table of Authorities

**Texas Supreme Court:**

*Allen v. American Nat'l Ins. Co.*
　　380 S.W.2d 604 (Tex. 2014)......................................................................15

*Burbage v. Burbage*
　　447 S.W.3d 249 (Tex. 2014).................................................................15, 20

*Cain v. Bain*
　　709 S.W.2d 175 (Tex. 1986)..................................................................... xi

*Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*
　　 823 S.W.2d 591(Tex. 1992)..................................................................... xi

*Evanston Ins. Co. v. Legacy of Life, Inc.*
　　370 S.W.3d 377 (Tex. 2012)......................................................................38

*Fitz-Gerald v. Hul*
　　237 S.W.2d 256 (Tex. 1951).....................................................................29

*Hoffmann-La Roche, Inc. v. Zeltwanger*
　　144 S.W.3d 438 (Tex. 2004)................................................................38, 41

*International Bank, N.A. v. Morales*
　　36 S.W.2d 622 (Tex. 1987)....................................................................... xi

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*
　　160 S.W.2d509 (Tex. 1942).....................................................................30

*Larson v. Cook Consultants, Inc.*
　　690 S.W.2d 567 (Tex. 1985)......................................................................15

*Lofton v. Texas Brine Corp.*
720 S.W.2d 804 (Tex. 1986)............................................................................ xi

*Merrell Dow Pharm., Inc. v. Havner*
953 S.W.2d 706 (Tex. 1997)............................................................................ xi

*Meyer v. Cathey*
167 S.W.3d 327 (Tex. 2005)..................................................................... 31-32

*Mills v. Gray*
210 S.W.2d 985 (Tex. 1948).............................................................................30

*Osterberg v. Peca,*
12 S.W.3d 31 (Tex. 2000)...........................................................................15, 20

*Salinas v. Salinas*
365 S.W.3d 318(Tex. 2012)..............................................................................15

*Schlumberger Tech. Corp. v. Swanson*
959 S.W.2d 171 (Tex. 1997)..............................................................................32

*Sherman v. First Nat'l Bank*
760 S.W.2d 240 (Tex. 1988)............................................................................ xi

*Standard Fruit and Vegetable Co. v. Johnson*
985 S.W.2d 62 (Tex. 1998)................................................................................38

*Tex. Bank & Trust Co.*
595 S.W.2d 502 (Tex. 1980)........................................................................31, 33

*Thigpen v. Locke*
363 S.W.2d 247 (Tex. 1962).................................................................xii, 30, 32, 33

*Valenzuela v. Aquino*
   853 S.W.2d 512(Tex. 1993)..................................................................39

*Wal-Mart Stores, Inc. v. Sturges,*
   52 S.W.3d 711(Tex. 2001)..................................................................16

**Texas Courts of Appeal:**

*Beaumont v. Basham*
   205 S.W.3d 608 (Tex. App.—Waco 2006)..................................................16

*Crounse v. State Farm Mut. Auto. Ins. Co.*
   336 S.W.3d 717 (Tex. App.—Houston [1st Dist.] 2010) ........................16

*Dorton v. Chase*
   262 S.W.3d 396 (Tex. App.—Waco 2008)..................................................16

*Eagle Oil & Gas Co. v. TRO-X, L.P.*
   416 S.W.3d 137 (Tex. App.—Eastland 2013) ...........................................15

*Editorial Caballero, S.A. de C.V. v. Playboy Enters., Inc.*
   359 S.W.3d 318 (Tex. App.—Corpus Christi 2012) ................................15

*Garza v. Cantu*
   431 S.W.3d 96 (Tex. App.—Houston [14th Dist.] 2013) ......................15

*Harstan, Ltd. v. Kim,*
   441 S.W.3d 791 (Tex. App.—El Paso 2014)......................................16, 20

*Hatton v. Turner*
   622 S.W.2d 450 (Tex. Civ. App.—Tyler 1981).........................................33

*Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*
     201 S.W.3d 272 (Tex. App.—Houston [14th Dist.] 2006) ................16, 17

*Holland v. Lesesne*
     350 S.W.2d 859 (Tex. Civ. App.—San Antonio 1961) ...........................33

*Hunter v. PriceKubecka, PLLC*
     339 S.W.3d 795 (Tex. App.—Dallas 2011) ...............................................16

*In re Estate of Bean*
     206 S.W.3d 749 (Tex. App.—Texarkana 2006)........................................16

*In the Interest of A.M.*
     385 S.W.3d 74 (Tex. App.—Waco 2012)...................................................15

*Internacional Realty, Inc. v. 2005 RP West, Ltd.*
     449 S.W.3d 512 (Tex. App.—Houston [1st Dist.] 2014).........................15

*Janssen Pharmaceutica, Inc. v. Martinez*,
     296 S.W.3d 634 (Tex. App.—El Paso 2009)..............................................16

*Levine v. Steve Scharn Custom Homes, Inc.*
     448 S.W.3d 637 (Tex. App.—Houston [1st Dist.] 2014).........................15

*Lee v. Dykes*, 312 S.W.3d 191
     (Tex. App.—Houston [14th Dist.] 2010) .................................................16

*Lee v. Hasson*
     286 S.W.3d 1 (Tex. App.—Houston [14th Dist.] 2007) ....................16, 33

*Lundy v. Masson*
     260 S.W.3d 482(Tex. App.—Houston [14th Dist.] 2008) .......................16

*Meek v. Onstad*
        430 S.W.3d 601(Tex. App.—Houston [14th Dist.] 2014) .......................15

*Oliva v. Davila*
        373 S.W.3d 94 (Tex. App.—Dallas 2011) ................................................15

*Pope v. Darcey*
        667 S.W.2d 270 (Tex. App.—Houston [14th Dist.] 1984) ......................32

*Priebe v. A'Hearn,*
        2011 Tex. App. LEXIS 2542, *15 (Tex. App.—Houston
        [1st Dist.] Apr. 6, 2011)(Mem. op.) ..........................................................40

*Rhey v. Redic,*
        408 S.W.3d 440 (Tex. App.—El Paso 2013)...............................................15

*Texas First Nat. Bank v. Ng*
        167 S.W.3d 842 (Tex. App.—Houston [14th Dist.] 2005) ...............17, 20

*Trostle v. Trostle*
        77 S.W.3d 908 (Tex. App.—Amarillo 2002)................................... 32-33

*Vanderpool v. Vanderpool*
        442 S.W.3d 756 (Tex. App.—Tyler 2014) ................................................ xii

*Young v. Fawcett*
        376 S.W.3d 209 (Tex. App.—Beaumont 2012) ........................................30

**Statutes**

Texas Health & Safety Code
        § 166.039(b) .................................................................................................22
        § 711.002 ......................................................................................................38

Texas Rules of Civil Procedure:

272, 274, 278, 279 ...................................................................................15

## Statement of the Case

Corrine Augustine Nichols Hill Shearer appeals the judgment against her from the County Court at Law No. 2, in Gregg County. David Shearer, Appellee, obtained a jury verdict on three causes of action he brought against Corrine Shearer. First, the jury unanimously found that Corrine Shearer breached the informal fiduciary duty that she owed Mr. David Shearer. The jury awarded $35,000 in mental anguish damages. After unanimously finding that Corrine Shearer acted with malice in breaching her fiduciary duty towards Mr. David Shearer, the jury unanimously awarded $10,000 in exemplary damages. Lastly, the jury found that Corrine Shearer intentionally inflicted emotional distress on Mr. David Shearer by wrongfully disposing of David Shearer's ashes. The jury awarded Mr. David Shearer $1,500 in mental anguish. After various post-trial motions, the trial court entered judgment on the verdict.

## Issues Presented

1. When Appellant failed to request the inclusion of, and failed to object to the omission of, certain factors in the jury charge concerning the existence of an informal fiduciary duty, did Appellant waive her ability to assert a legal and factual sufficiency challenge on such factors?

2. Was there legally and factually sufficient evidence that a relationship of trust and confidence existed as charged by the Court?

3. If Appellant preserved error, are the three factors raised by Appellant required to establish the existence of an informal fiduciary duty?

4. Was there an alternative theory of recovery that David Shearer could have recovered under other than an intentional infliction of emotional distress claim when there is no fair market value of bodily remains thereby precluding a conversion claim for the destruction of his father's ashes?

## STANDARD OF REVIEW

When conducting a legal sufficiency of the evidence review, an appellate court considers only the evidence and inferences which tend to support the lower court's findings and disregards all evidence and inferences to the contrary. *International Bank, N.A. v. Morales*, 736 S.W.2d 622, 624 (Tex. 1987). If the evidence at trial furnishes some reasonable basis for reasonable minds to reach different conclusions on the existence of the vital fact, the evidence amounts to more than a scintilla of evidence, and the no evidence challenge fails. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex. 1988). When the evidence offered to prove a vital fact is more than a mere scintilla, an appellate court must overrule a no evidence point of error. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

When conducting a factual sufficiency of the evidence review, the reviewing court examines all of the evidence. *Lofton v. Texas Brine Corp.*, 720

S.W.2d 804, 805 (Tex. 1986). A verdict can only be set aside when the evidence is so weak that the verdict is clearly wrong and manifestly unjust in light of all of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In Texas, the existence of an informal fiduciary relationship—also known as a confidential relationship—is a question of fact for the factfinder to answer. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992); *Vanderpool v. Vanderpool*, 442 S.W.3d 756, 765 (Tex. App.—Tyler 2014, no pet.) (citing *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962)). Whether an informal fiduciary relationship was created "is determined from the actualities of the relationship between the persons involved." *Thigpin v. Locke*, 363 S.W.2d at 253.

**STATEMENT OF FACTS**

In 1990, John Shearer married Corrine Augustine Nichols Hill Shearer (Corrine Shearer), Appellant. 4 RR 34. David Shearer, Appellee, is John Shearer's son from a previous marriage. 4 RR 34. On February 1, 2008, John Shearer and Corrine Shearer legally divorced in Gregg County, Texas. 4 RR 35; Pl's Ex. 7. They never remarried, and were not common law married after their divorce. 5 RR 35-43, 48-50. They continued to live together in the same house after their divorce until John Shearer was hospitalized. 4 RR 35.

On November 2, 2009, John Shearer fell ill and went to the Overton Brooks VA Medical Center ("Overton VA") in Shreveport, Louisiana. 4 RR 43. Corrine Shearer accompanied him to the hospital. 4 RR 43. On the second day of John Shearer's three (3) day stay at the Overton VA, medical personnel found out that Corrine Shearer was John Shearer's ex-wife. 4 RR 39, 44-46; Pl's. Ex. 2-85, 8 RR 91. Corrine was informed by a social worker at the Overton VA that because she was John Shearer's ex-wife, she did not have any legal authority to make medical decisions on John Shearer's

1

behalf. 4RR 46-47; Pl's. Ex. 2-85; 8 RR 91. Corrine Shearer had a document faxed to the Overton VA which expressly provided that she had no authority to make medical decisions on John Shearer's behalf. 4 RR 47-48; Pl's. Ex. 2-85; 8 RR 91. Moreover, the social worker informed Corrine Shearer that the person that had the legal authority to make those decisions was David Shearer. 4 RR 47-48; Pl's. Ex. 2-85; 8 RR 91. As such, Corrine Shearer gave the social worker David Shearer's cell phone number. 4 RR 52; Pl's. Ex. 2-85; 8 RR 91.

The social worker called David Shearer and left him a message informing him he had the authority to make medical decisions on behalf of his father, John Shearer. 4 RR 48; Pl's. Ex. 2-85; 4 RR 211. Corrine Shearer and David Shearer also spoke over the phone, and Corrine Shearer confirmed that David Shearer had the right to make medical decisions on John Shearer's behalf. 4 RR 211. Soon thereafter, John Shearer was transferred to the Houston Michael E. DeBakey VA Medical Center ("Houston VA"). 4 RR 50.

Corrine Shearer traveled to the Houston VA where John Shearer was transferred. 4 RR 83. Knowing that if the Houston VA found out that she was John Shearer's ex-wife she would have no authority to make medical decisions on behalf of John Shearer, Corrine Shearer represented to the doctors, medical staff and hospitality personnel at the Houston VA that she was John's wife. 4 RR 75, 93, 95, 98; Pl's. Ex. 3-39; 8 RR 683. David Shearer was unaware that Corrine Shearer was representing herself to doctors and medical staff as his father's wife. 4 RR 175.

Just prior to John Shearer's illness, David Shearer's wife was diagnosed with a brain tumor. 4 RR 56-58, 155. A week prior to John Shearer's illness, David Shearer was involved in a recreational shooting accident that resulted in part of his index finger being amputated. 4 RR 55-56, 58, 153-155. As a result of his own injury, David missed a week of work at Aerosmith Aviation. 4 RR 56, 155. David Shearer was paid hourly, and lost a week's pay. 4 RR 155. Thus, while John Shearer was at the Houston VA, David Shearer was not able to stay in Houston, or visit regularly, because he was working to support his wife and three minor children, ages

3

three, seven, and twelve. 4 RR 56-57, 156. As such, David relied on Corrine Shearer to relay the information she obtained from the doctors to him so that he could make decisions concerning his father. 4 RR 59, 67-68, 156-57, 195, 198.

David called Corrine Shearer almost on a daily basis, sometimes multiple times a day, to get updates on his father's condition. 4 RR 158; Pl's Ex. 6; Pl's. Demonstrative Ex. 1; 8 RR 588 – 599 and 8 RR 601 - 609. David's cell phone number was 903-261-2471, Corrine's cell phone number was 903-452-2956. 4 RR 52; Pl's Ex. 6. David and Corrine Shearer spoke over 60 times during John Shearer's 33 day stay at the Houston VA. 4 RR 53-56; Pl's Ex. 6; Pl's. Demonstrative Ex. 1; 8 RR 590 – 599 and 8 RR 601 - 609. Corrine Shearer also called David Shearer, initiating 19, nearly 1/3 of the phone calls. 4 RR 174; Pl's Ex. 6; Pl's. Demonstrative Ex. 1; 8 RR 590 – 593, 8 RR 596, 8 RR 604 – 605 and 8 RR 608 - 609. David and Corrine Shearer spoke extensively on one topic, and one topic only: John Shearer's medical condition. 4 RR 55. Corrine Shearer provided David with updates concerning John Shearer's need for surgery, updates on John Shearer while

he was in surgery, and the updates post-surgery, in addition to relaying any other information Corrine Shearer received from John Shearer's physicians. 4 RR 96-97, 174. David Shearer, however, did not know that Corrine Shearer was representing herself to be John Shearer's wife and making medical decisions on John Shearer's behalf during his stay at the Houston VA. 4 RR 175-76.

David Shearer went to the Houston VA in late November to visit with his father, met with physicians and to talk with Corrine Shearer. 4 RR 60-63, 65-66, 158, 160-161. David Shearer discussed John Shearer's future medical care with the doctors, including the possibility of ordering a do-not-resuscitate (DNR). 4 RR 160-161. David Shearer and Corrine Shearer also discussed the possibility of ordering a DNR in the future, including that if that situation arose, Corrine Shearer would let David know and he would make the decision to enter a DNR. 4 RR 59-63, 65-66, 161-162, 191-192, 198, 211. David returned home and made arraignments with his employer to be able to leave in the event he needed to make a decision concerning issuing a DNR. 4 RR 165.

After David left Houston, Corrine Shearer repeatedly told David that his father's health was either improving or no worse. 4 RR 186-187. She even stated that John Shearer had made a "miraculous recovery." 4 RR 65-66, 90, 162-163. David continued to speak to Corrine Shearer almost every day to check on his father's health. 4 RR 53-56, 67; Pl's Ex. 6; Pl's. Demonstrative Ex. 1; 8 RR 602 - 609. Corrine Shearer repeatedly told David during these conversations that there was not much change in John Shearer's condition. 4 RR 186-87.

Sometime before 6:00p.m., on December 7, a physician explained to Corrine Shearer that John Shearer would likely need lifelong hemodialysis, may need ventilator support, and that it was now time to discuss "end of life issues" and the possibility of withdrawing life sustaining care. 4 RR 68-70; Pl's. Ex. 3-39; 8 RR 683. Corrine Shearer represented to the physician that she needed to call family. 4 RR 70-71; Pl's. Ex. 3-39; 8 RR 683. This conversation occurred at or before 6:05 p.m. on December 7, 2009. 4 RR 70; Pl's. Ex. 3-39; 8 RR  683. Just over an hour later, David Shearer called Corrine Shearer and the two talked for over eleven (11) minutes. 4 RR 71-

73, 163; Pl's Ex. 6; Pl's Demonstrative 1; 8 RR 608. At no point did Corrine Shearer tell David about the conversation she had with the physician regarding long term care, and the possibility of withdrawing or deescalating John Shearer's medical care. 4 RR 72-73, 163-64.

The next day, December 8, 2009, around 12:30 p.m., Corrine Shearer informed John Shearer's doctors that she wanted care withdrawn at this time. Pl's. Ex. 3-16; 8 RR 772; 4 RR 73-76, 104, 116. The doctors obeyed Corrine Shearer's orders and withdrew all care from John Shearer that afternoon, including: (1) a ventilator, (2) all life sustaining medications, and (3) all nutritional support. Pl's Ex. 3-16; 8 RR 772. All care was withdrawn from John Shearer by 3:48 p.m. on December 8, 2009. Pl's Ex. 3-18; 8 RR 772.

Pursuant to his usual routine, David Shearer called Corrine Shearer around 6:00 p.m. on December 8, 2009 and the two spoke for over six (6) minutes. Pl's Ex. 6; Pl's. Demonstrative Ex. 1; 8 RR 609; 4 RR 77-79, 164-165. During that conversation, Corrine Shearer failed to mention to David Shearer that she ordered all life sustaining machines, life sustaining medications, and all nutritional support be withdrawn from John Shearer

7

just hours before and that she had ordered the DNR. 4 RR 76-79, 82, 127, 164-165. As a result, John Shearer died alone, without the comfort of his son, at 4:00 a.m. on December 9, 2009—approximately 16 hours after Corrine Shearer had ordered the DNR and almost ten (10) hours after Corrine Shearer failed to disclose to David what she had done. Pl's Ex. 3— 8; 8 RR  679; 4 RR 78-79, 82, 127, 164.  David Shearer never had an opportunity to say goodbye to his father. 4 RR 86, 165-166. Remarkably, Corrine Shearer thinks David should feel guilty for not being able to say goodbye to John before he died. 4 RR 86. Yet, she admits that David was entitled to every piece of information that she could have told David. 4 RR 132.

David Shearer was surprised to hear his father had passed away because Corrine Shearer had told him that his father's health was improving. 4 RR 186-187. Corrine Shearer never told David that she ordered a DNR on John Shearer, nor did she ever inform David that she had ordered all life sustaining machines, medications and nutrients be withdrawn from John Shearer. 4 RR 83-84, 165. David did not find out that

Corrine Shearer had ordered all life sustaining care be withdrawn from his father and ordered the DNR until he requested a copy of John Shearer's medical records. 4 RR 83-84, 165.

The day John Shearer died, Corrine Shearer, under no authority, instructed the hospital to deliver John Shearer's body to Cremate Texas, Inc. so his body could be cremated. 4 RR 83, 211. Pursuant to Corrine Shearer's orders John Shearer's body was cremated. 4 RR 83.

After learning that his father's body was cremated David Shearer informed Corrine Shearer of his intent to take his father's ashes. 4 RR 84-85. Despite telling Corrine Shearer that he wanted his father's ashes, Corrine Shearer disposed of John Shearer's ashes without the knowledge or consent of David. 4 RR 84-85, 204. David learned that Corrine Shearer had disposed of his father's ashes from his aunt. 4 RR 204.

David Shearer as independent administrator of his father's estate brought claims against Corrine Shearer for invasion of John Shearer's privacy in private affairs, specifically concerning the decisions regarding John Shearer's medical care. David Shearer, in his individual capacity,

brought additional causes of action against Corrine Shearer. David Shearer sued Corrine Shearer for invasion of privacy, namely for making decisions regarding his father's medical care that were David's to make, for Corrine Shearer's breach of the relationship of trust and confidence between the two of them (informal fiduciary duty), and conversion of John Shearer's ashes. Additionally, David brought an action for intentional infliction of emotional distress for disposing of John Shearer's Ashes without David Shearer's consent or knowledge and disposing of them in manner directly contrary to David Shearer and John Shearer's wishes.

The case was tried by a jury. At the close of evidence Corrine Shearer moved for, and was awarded, a directed verdict on David's conversion claim. 5 RR 15-16. All other claims were submitted to the jury. The jury unanimously found that an informal fiduciary relationship existed between David Shearer and Corrine Shearer and the jury unanimously found that Corrine Shearer breached her informal fiduciary duty to David. Accordingly, the jury awarded David Shearer $35,000.00 for mental anguish. Further, the jury unanimously found that Corrine Shearer acted

10

with malice in breaching her informal fiduciary duty and unanimously awarded $10,000.00 in exemplary damages. Additionally, the jury found that Corrine Shearer intentionally inflicted emotional distress on David through her taking and disposing of John Shearer's ashes. The jury awarded $1,500 in damages.

The trial court denied Corrine Shearer's Motion to Disregard Certain Jury Findings and her J.N.O.V. Corrine Shearer then filed a Motion to Set Aside Judgement and for New Trial. The trial court denied her motions.

## SUMMARY OF THE ARGUMENT

The jury unanimously found that an informal fiduciary relationship existed between Mr. David Shearer, Appellee, and Corrine Shearer, Appellant, and the trial court entered judgement on that finding. The jury also unanimously found that Ms. Corrine Shearer maliciously breached her informal fiduciary duty. Importantly, Appellant does not raise any point on appeal concerning the jury's unanimous finding that Ms. Corrine Shearer maliciously breached her fiduciary duty. Instead, Appellant contends that there was insufficient evidence of the existence of an

11

informal fiduciary duty between herself and David Shearer. Yet, Corrine Shearer failed to preserve error for her no evidence grounds. Corrine Shearer appeals the jury's unanimous finding of the existence an informal fiduciary relationship on the grounds that there is legally and factually insufficient to establish that: (1) a relationship of trust existed prior to and apart from the basis of David's cause of action; (2) David "was accustomed to receiving judgment or advice from Corrine," and (3) Corrine Shearer was not in a position of "dominance on one side" coupled with "David's weakness," on the other. Appellant's Br. 7. The trial court's jury charge, however, did not define a fiduciary duty as requiring any of those three factors. Corrine Shearer did not request that the trial court define, or otherwise charge the jury, that the existence of an informal fiduciary duty requires evidence of all (or any) of these three factors. Moreover, Corrine Shearer did not object to the omission of any of these factors from the trial court's charge. In fact, the language used by the court in instructing the jury on an informal fiduciary relationship is substantially the same as the language Corrine Shearer requested. Def's. Proposed Charge, 5; Jury

12

Charge, 7. As a result, Corrine Shearer failed to preserve error on these grounds. Accordingly, any legal or factual sufficiency review should be based on the Court's charge.

Plaintiff, however, does not read Corrine Shearer's Appellant brief as alleging that there is legally or factually insufficient evidence of the existence of an informal fiduciary duty under the trial court's charge. Because Corrine Shearer failed to preserve error, and because Corrine Shearer does not argue that there is legally or factually insufficient evidence of the existence of an informal fiduciary relationship under the trial court's charge, there is no need for this Court to conduct a legal and/or factual sufficiency review of the jury's unanimous finding. However, if this Court does finds that Corrine Shearer properly raised her factual and legal sufficiency points under the charge provided to the jury, there is legal and factually sufficient evidence supporting the jury's unanimous finding.

Alternatively, if this court finds Corrine Shearer preserved error, her legal and factual sufficiency points of error are irrelevant as the three factors relied upon by Corrine Shearer are not required for the creation

and/or existence of an informal fiduciary relationship. As the three factors are not required, insufficient evidence for any or all of them do not render the jury verdict improper.

Next, if this Court holds that the three factors are required for the creation and/or existence of an informal fiduciary duty, the record establishes that the jury had sufficient evidence to find an informal fiduciary relationship existed prior to and apart from the basis of David's cause of action, that David was accustomed to receiving judgment or advice, and that Corrine Shearer was in a position of power over David.

Finally, the trial court correctly allowed David Shearer to recover on his claim for intentional infliction of emotional distress because no other tort remedy for mental anguish pertaining to the disposal of John Shearer's ashes was available.

# ARGUMENT

**I.    Corrine Shearer Failed to Preserve Error by Failing to Request the Inclusion of, and Failing to Object to the Omission of, the Additional Three Factors that Form the Foundation of Her Legal and Factual Sufficiency Challenges Regarding the Existence of an Informal Fiduciary Duty.**

An appellate court reviews the evidence in light of the charge given to the jury. *Burbage v. Burbage*, 447 S.W.3d 249, 260 (Tex. 2014). That is, the trial court's charge sets the standard for legal and factual sufficiency review. *Id*. "[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." TEX. R. CIV. P. 272, 274, 278, 279; *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000).[1]

---

[1] See also *Burbage v. Burbage*, 447 S.W.3d at 260; *Salinas v. Salinas*, 365 S.W.3d 318, 321 (Tex. 2012); *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex. 1985); *Allen v. American Nat'l Ins. Co.*, 380 S.W.2d 604, 609 (Tex. 1964); *Internacional Realty, Inc. v. 2005 RP West, Ltd.*, 449 S.W.3d 512, 532 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 649 (Tex. App.—Houston [1st Dist.] 2014, pet. filed); *Meek v. Onstad*, 430 S.W.3d 601, 608 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 416 S.W.3d 137, 148 (Tex. App.—Eastland 2013, pet. granted); *Garza v. Cantu*, 431 S.W.3d 96, (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Rhey v. Redic*, 408 S.W.3d 440, 452 (Tex. App.—El Paso 2013, no pet.); *In the Interest of A.M.*, 385 S.W.3d 74, 81(Tex. App.—Waco 2012, no pet.); *Editorial Caballero, S.A. de C.V. v. Playboy Enters., Inc.*, 359 S.W.3d 318, 329 (Tex. App.—Corpus Christi 2012, pet. denied); *Oliva v. Davila*, 373 S.W.3d 94, 101 (Tex. App.—Dallas 2011,

When a party fails to request the inclusion of particular factors in the jury charge and additionally fails to object to the omission of the same factors from the charge, the party cannot then claim on appeal that the judgment should be reversed because there is legally and factually insufficient evidence of the factors because the trier of fact was never asked to consider them. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 283-86 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Accordingly, when the charge does not instruct the jury to consider an element of a cause of action, finding insufficient evidence regarding that element is immaterial. *Harstan, Ltd. v. Kim*, 441 S.W.3d 791, 799 (Tex. App.—El Paso 2014, no pet.)(because the charge for statuary fraud failed to require justifiable reliance, legally

---

pet. denied); *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 807 (Tex. App.—Dallas 2011, no pet.); *Crounse v. State Farm Mut. Auto. Ins. Co.*, 336 S.W.3d 717, 719 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Lee v. Dykes*, 312 S.W.3d 191, 194 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Janssen Pharmaceutica, Inc. v. Martinez*, 296 S.W.3d 634, 644(Tex. App.—El Paso 2009, no pet.); *Dorton v. Chase*, 262 S.W.3d 396, 398 (Tex. App.—Waco 2008, pet. denied); *Lundy v. Masson*, 260 S.W.3d 482, 492 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *In re Estate of Bean*, 206 S.W.3d 749, 760 (Tex. App.—Texarkana 2006, pet. denied); *Lee v. Hasson*, 286 S.W.3d 1, 20 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Beaumont v. Basham*, 205 S.W.3d 608, 619 (Tex. App.—Waco 2006, pet. denied).

sufficient evidence on justifiable reliance was not necessary); see also *Texas First Nat. Bank v. Ng*, 167 S.W.3d 842, 855-56 (Tex. App.—Houston [14th Dist.] 2005, judgm't vacated w.r.m.) (the complaining party waived any argument that evidence was insufficient to support finding of justifiable reliance because jury charge did not require justifiable reliance). Said differently, sufficiency of the evidence reviews cannot be based on legal standards that were not submitted to the jury. *Id.*; see also *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 283-86 (Tex. App.—Houston [14th Dist.] 2006, no pet.)(rejecting appellant's legal arguments establishing substantial performance because they were not submitted to the jury).

Here, the charge contained only one question pertaining to the existence of an informal fiduciary duty, and it was Question 5. Specifically, "Question 5" asked:

> Did a relationship of trust and confidence exist between DAVID SHEARER and CORRINE SHEARER at the time of the occurrence?

Jury Charge, 7. The trial court instructed the jury that:

> A relationship of trust and confidence existed if DAVID SHEARER justifiably placed trust and confidence in CORRINE SHEARER to act in DAVID SHEARER's best interest. DAVID SHEARER's subjective trust and feelings alone do not justify transforming an arms-length dealings into a relationship of trust and confidence.

Jury Charge, 7. The trial court instructed the jury to consider only whether a relationship of trust and confidence existed between Corrine Shearer and David Shearer. *Id*. Moreover, the trial court instructed the jury that "[a] relationship of trust and confidence existed if David Shearer justifiably placed trust and confidence in Corinne Shearer to act in David Shearer's best interest. David Shearer's subjective trust and feelings alone do not justify transforming arm's-length dealings into a relationship of trust and confidence." Jury Charge, 7. Additionally, the trial ourt instructed the jury that a relationship of trust and confidence "cannot be based solely on David's subjective feelings." Jury Charge, 7.

The trial court's charge is almost verbatim to the language Corrine Shearer submitted to the trial court in her proposed charge. Def's. Proposed Charge, 5. Indeed, Corrine Shearer requested that the trial court charge the jury as follows:

18

Did a relationship of trust and confidence exist between Corrine Shearer and David Shearer?

A relationship of trust and confidence existed if David Shearer justifiably placed trust and confidence in Corinne Shearer to act in David Shearer's best interest. David Shearer's subjective trust and feelings alone do not justify transforming arm's-length dealings into a relationship of trust and confidence.

Def's. Proposed Charge, 5.

As seen above, the only difference between Corrine Shearer's requested charge and the charge used by the trial court, is that the trial court's charge added the phrase "at the time of the occurrence" at the end of the question. See Def's Proposed Charge, 5; Jury Charge, 7. Corrine Shearer never requested that the trial court charge the jury on the three factors which now form the foundation of her legal and factual sufficiency challenges. Specifically, Corrine Shearer did not request the addition of, or object to the exclusion of, a definition of trust and confidence that required proving that: (1) the confidential relationship existed prior to and apart from the basis of the cause of action; (2) that David was accustomed to being guided by the judgment or advice of Corrine Shearer, or (3) that Corrine Shearer and David lacked equal footing in their relationship.

19

Corrine Shearer's attorneys objected only to the submission of "Question 2" and "Question 9." 5 RR 26-27. After lodging her objections to the submission of Questions 2 and 9, Corrine Shearer's attorney stated unequivocally that "I have no requested additions to the charge." 5 RR 26. Corrine Shearer's attorney's statement concluded the charge conference. 5 RR 26-27. Accordingly, Corrine Shearer waived her legal and factually sufficiency points on these factors. See *Burbage v. Burbage*, 447 S.W.3d at 255; *Harstan, Ltd.*, 441 S.W.3d at 799; *Texas First Nat. Bank*, 167 S.W.3d at 855-56. Consequently, Corrine Shearer's legal and factual sufficiency points should be overruled.

Corrine Shearer's failure to object or request any change to "Question 5" requires this Court to review the sufficiency of the evidence in light of the charge given by the court. *Burbage v. Burbage*, 447 S.W.3d 249, 260 (Tex. 2014) (when the appellant fails to object to the charge or to request a different charge, the sufficiency of the evidence is measured by the trial court's charge); *Osterberg v. Peca*, 12 S.W.3d at 55. Thus, the sufficiency of the evidence to support the existence of an informal fiduciary duty is

limited to the factors and elements the court instructed the jury on, and defined for the jury. *Id.* Yet, Corrine Shearer does not raise on appeal that there is legally or factually insufficient evidence to support the jury's finding under the trial court's charge. Accordingly, there is no reason for this Court to perform a legal or factual sufficiency review, and Corrine Shearer's appellate points concerning the existence of an informal fiduciary duty should be overruled.

## II. There Is Legally and Factually Sufficient Evidence Supporting the Jury's Unanimous Finding of the Existence of An Informal Fiduciary Relationship Under the Court's Charge.

If, however, this Court finds that Corrine Shearer has properly raised an appellate point concerning the legal and factual sufficiency of the evidence concerning the existence of an informal fiduciary duty under the trial court's charge, there is legally and factually sufficient evidence to support the jury's verdict and trial court's judgment.

Prior to John Shearer's transfer to the Houston VA, Corrine knew from the social worker at the Overton VA that because she was John Shearer's ex-wife, she had no legal authority to make medical decisions on

John Shearer's behalf. 4 RR 46-48; Pl's. Ex. 2-85; 8 RR 91. She also knew that the document she had faxed to the Overton VA expressly provided that she did not have the right to make medical decisions on John Shearer's behalf. 4 RR 47; Pl's. Ex. 2-85; 8 RR 91. Moreover, she knew from the social worker at the Overton VA that the person that had the legal authority to make those decisions was David. 4 RR 47; Pl's. Ex. 2-85; 8 RR 91. David correctly believed he was the individual with the right to make medical decisions on behalf of his father, John Shearer. 4 RR 172, 191, 192, 194, 198, 211; Tex. Health & Safety Code §166.039. Corrine even said this to David during their conversations prior to John's death. 4 RR 59-63, 65-66, 161-162, 191-192, 198, 211. Moreover, the Overton VA left him a voicemail saying that he had the right to make medical decisions on behalf of his dad. 4 RR 172, 192, 198.

Moreover, Corrine Shearer knew that David could not come down to stay with John Shearer at the Houston VA. 4 RR 55-58. Corrine knew that David was in a gun accident just a week prior to John Shearer falling ill and that David Shearer's wife had recently been diagnosed with a brain tumor.

22

4 RR 55-58. She also knew that David had three minor children to support. 4 RR 57. As a result, Corrine Shearer knew that David was trusting her to relay the information she obtained from the doctors to him so that he could make decisions concerning his father. 4 RR 59, 67-68, 198. Moreover, Corrine knew that David trusted her to provide him with accurate information regarding John Shearer's medical condition:

> Q: You knew, Corrine Shearer, that during all of those phone conversations, that David was trusting you to accurately tell him what was going on with his father?
> A: I did the best I could do, sir. Yes, sir.
> Q: That doesn't answer my question.
> A: I'm sorry. What was it?
> Q: My question was, you knew David was trusting you to accurately provide the information about his father, yes or no?
> A: Yes.
> Q: And you also knew that if David's father's condition, John's condition, got to the point where death was going to happen for sure, he was trusting you to give him a call?
> A: I don't know.
> Q: Remember giving a deposition in this case, Corrine Shearer?
> A What did you say?
> Q: You remember giving a deposition in this case?
> A: Yes
> Q: You were under oath?

23

A: Yes.

…

Q: [reading from Corrine Shearer's Deposition] Did you believe David trusted that you would tell him if his father's condition got to a point where death was likely? Answer. Death was always likely, but, yes. Did I read that correctly?

A: Yes.

Q: So you knew that he was trusting you that if that point came –

A: Well, yes, sir. Everybody was trusting me. I had to tell them everything.

4 RR 59-60.

Nearly every day, sometimes multiple times a day, David would call Corrine or vice versa. 4 RR 53-56, 158, 174; Pl's Ex. 6; Pl's Demonstrative Ex. 1; 8 RR 590 – 599 and 8 RR 601 - 609. In fact, David and Corrine talked over 60 times during John Shearer's 33 day stay at the Houston VA hospital. Pl's Ex. 6; Pl's Demonstrative Ex. 1; 8 RR 590 – 599 and 8 RR 601 - 609. Yet, this was NOT a one-sided relationship. That is, David did NOT initiate all the calls. 4 RR 53-56, 158, 174; Pl's Ex. 6; Pl's Demonstrative Ex. 1; 8 RR 590 – 599 and 8 RR 601 609.  Corrine Shearer perpetuated the relationship of trust and confidence by initiating 19, nearly 1/3 of the, phone calls. 4 RR 174; Pl's Ex. 6; Pl's. Demonstrative Ex. 1; 8 RR 590 – 593, 8 RR 696, 8 RR 604 – 605

24

and 8 RR 608 - 609. Every phone call between Corrine and David was about one thing: John Shearer's medical condition. 4 RR 55, 174. Indeed, Corrine Shearer updated David concerning the John Shearer's need for surgery, updates on John Shearer while he was in surgery, and the updates post-surgery, in addition to relaying other information Corrine Shearer received from John Shearer's physicians. 4 RR 96-97; 174. David Shearer, however, did not know Corrine Shearer was making medical decisions on John Shearer's behalf during his stay at the Houston VA. 4 RR 175-76. Nor did David Shearer know that she was representing herself to be John Shearer's wife at the Houston VA. 4 RR 175.

Moreover, when David Shearer went to the Houston VA in late November, he visited with his father, met with physicians, and met with Corrine Shearer. 4 RR 161. They discussed John Shearer's future care, including the possibility of needing to order a DNR. 4 RR 161. David Shearer and Corrine Shearer further discussed the possibility of a DNR being ordered in the future, including the fact that if that situation arose, Corrine Shearer would let David know and David would make the

25

decision whether to enter a DNR. 4 RR 59-63, 65-66, 161-162, 191-192, 198, 211. In fact, after returning home to Longview from his trip to the Houston VA in late November, David Shearer made arrangements with his employer to leave in the event he needed to make a decision on whether to enter a DNR on his father. 4 RR 165. Instead, Corrine Shearer informed David Shearer that John Shearer had made a miraculous recovery and that the possibility of a DNR was off the table. 4 RR 162-163. From then to the day John Shearer died, Corrine Shearer told David that there was not much change in John Shearer's condition. 4 RR 186-87.

On December 7, 2009, a physician discussed John Shearer's long term expectations with Corrine Shearer, including the fact that John Shearer would likely need lifelong hemodialysis and may need ventilator support. Pl's. Ex. 3- 39; 8 RR 683.  Corrine Shearer and the physician discussed end of life issues and possibly withdrawing versus deescalating care. Pl's. Ex. 3-39; 8 RR 683.  Corrine Shearer represented to the physician that she needed to call family. Pl's. Ex. 3-39; 8 RR 683. This conversation between Corrine Shearer and the physician occurred at or before 6:05 p.m. on December 7,

2009. Pl's. Ex. 3-39; 8 RR 683. At 7:26 p.m., just over an hour later, David Shearer called Corrine Shearer and the two talked for over eleven (11) minutes. Pl's Ex. 6; Pl's Demonstrative 1; 8 RR 606. Not one time during this eleven minute conversation did Corrine Shearer tell David Shearer that she and the physician discussed long term care, or the possibility of withdrawing or deescalating John Shearer's medical care. 4 RR 163-64.

On the morning of December 8, Corrine Shearer lied to the doctors telling them that she had spoken with John's family, and that she wanted care withdrawn at this time. Pl's. Ex. 3-18; 8 RR 772. All life sustaining machines, medications and nutritional support was withdrawn from John Shearer by 3:48 p.m. on December 8, 2009. Pl's. Ex. 3-18; 8 RR 772. Corrine Shearer did not inform David Shearer that she had placed such a directive to physicians. 4 RR 73, 163-64. David Shearer called Corrine Shearer on the evening of December 8, 2009 at 6:01 p.m. and the two spoke for over six (6) minutes. Pl's Ex. 6; Pl's. Demonstrative Ex. 1; 8 RR 609; 4 RR 77-79. During that conversation, Corrine Shearer never mentioned that she had ordered all life sustaining machines, life sustaining medications, and all nutritional

support be withdrawn from John Shearer just hours before. 4 RR 78-79 127, 164. Nor did she inform David that Corrine Shearer ordered a DNR on John Shearer. 4 RR 78-79 127, 164. John Shearer passed away around 4:00 a.m. on December 9, 2009 without the comfort of his son and approximately 16 hours after Corrine Shearer ordered all life sustaining machines, life sustaining medications and nutritional support be withdrawn and ordered the DNR. 4 RR 82-83; Pl's. Ex. 3-8; 8 RR 679. That is almost ten (10) hours after Corrine Shearer failed to disclose to David what she had done during their phone conversation. Pl's Ex. 3-18; 8 RR 772; 4 RR 78-79 127, 164. Corrine Shearer never told David that she ordered the DNR, or that she ordered all life sustaining machines, medications and nutrients be withdrawn from John Shearer. Pl's Ex. 3-18; 8 RR 772.

Objectively, David was justified in his reliance on Corrine Shearer to give him accurate and correct information regarding his father's medical treatment. Corrine Shearer knew she had no right to make medical decisions on John Shearer's behalf. David Shearer knew that Corrine Shearer had no right to make medical decisions on John Shearer' behalf.

28

Corrine Shearer further knew David had the right to make such medical decisions, she concealed the fact from David that she was misrepresenting herself to the Houston VA physicians as John Shearer's wife, and she perpetuated the relationship of trust and confidence by confirming to David that he had the right to make the medical decisions on John's behalf, by confirming to David that it was his decision concerning the DNR and by continuously providing David Shearer with updates concerning his father's medical condition. There is more than legally and factually sufficient evidence to support the jury's unanimous finding that a relationship of trust and confidence existed between David and Corrine Shearer. Accordingly, Appellant's legal and factually sufficient points should be overruled.

## III. Corrine Shearer's Legal and Factual Sufficiency Points of Error are Irrelevant Because the Factors Raised by Corrine Shearer in Her Appeal are Not Required for the Creation of, or the Existence of, an Informal Fiduciary Duty.

A fiduciary duty may arise from an informal relationship "where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or purely personal one." *Fitz-Gerald v. Hull*, 237 S.W.2d

29

256, 261 (Tex. 1951). The term fiduciary refers to any person owing a "duty of integrity and fidelity, and it applies to any person who occupies a position of peculiar confidence towards another." *Young v. Fawcett*, 376 S.W.3d 209, 214 (Tex. App.—Beaumont 2012, no pet.) (quoting *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d509, 512 (Tex. 1942). Thus, purely personal relationships, where one places trust in and relies upon a person, may give rise to a fiduciary duty. See *Mills v. Gray*, 210 S.W.2d 985, 986-89 (Tex. 1948).

Subjective trust alone is not sufficient to establish a confidential relationship. *Thigpin v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). The Texas Supreme Court has not identified any additional elements that must be present in establishing an informal fiduciary. See *Id*; see also *Young v. Fawcett*, 376 S.W.3d at 214. There are no additional required elements because determining if an informal fiduciary duty exists is "determined from the actualities of the relationship between the persons involved." *Thigpin v. Locke*, 363 S.W.2d 247, 253. Moreover, informal fiduciary relationships are determined by the particular circumstance and are thus

30

not governed by hard and rigid tests. *Tex. Bank & Trust Co.*, 595 S.W.2d 502, 508 (Tex. 1980).

In *Texas Bank & Trust Co.*, the Texas Supreme Court reversed the judgement of the appellate court and reinstated the trial court's judgement finding that a fiduciary relationship existed between the nephew of the decedent and the administrator of the decedent's estate. *Id*. at 502. The Court noted that when determining whether an informal fiduciary relationship exists the "problem is one of equity "and the creation of informal fiduciary relationships is "not subject to hard and fast lines." *Id*. at 507. As a result, the factors raised in Corrine Shearer's legal and factual sufficiency points are not pre-requisites to the creation and/or existence of an informal fiduciary relationship. Accordingly, insufficient evidence for any or all of them does not render the jury verdict improper.

Corrine Shearer argues that the "the confidential relationship must exist prior to, and apart from, the transaction that forms the basis of the lawsuit." Appellant's Br. 10, citing to *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005). This argument misapplies the rule in *Meyer*. In *Meyer*, the

Court stated that in a "business transaction" the relationship of trust and confidence must exist prior to and apart from the transaction. *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005). That is because courts are reluctant to impose an informal fiduciary relationship in business transactions in an effort to "give full force to contracts." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005), citing to *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). When the informal fiduciary relationship arises in a purely personal context, the danger of infringing on private contracts is not implicated.

Lacking equal footing in a relationship is another factor that a court has examined when analyzing whether an informal fiduciary relationship exists. See *Pope v. Darcey*, 667 S.W.2d 270, 273 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Likewise, a court has looked at whether the plaintiff was accustomed to relying on advice of another. *Trostle v. Trostle*, 77 S.W.3d at 914. Yet, the Supreme Court in *Thigpen* did not hold that these are required factors. *Thigpin v. Locke,* 363 S.W.2d 247. In fact, the Thigpen Court did not consider them at all. *Id*. Instead, the Thigpen Court focused

on whether the plaintiff was justified in believing the defendant would act in his best interest. *Id.*

The fact that there are no hard and fast requirements for the creation and/or existence of an informal fiduciary relationship is also illustrated by the fact that other appellate courts have looked at different factors. Specifically, other courts examining the existence of an informal fiduciary relationship in a personal context have considered whether the plaintiff relied on the defendant for support, the plaintiff's advanced age and poor health, and evidence of the plaintiff's trust. *Trostle v. Trostle*, 77 S.W.3d 908, 915 (Tex. App.—Amarillo 2002, no pet.); see also *Lee v. Hasson*, 286 S.W.3d at 14-16; *Hatton v. Turner*, 622 S.W.2d 450, 458 (Tex. Civ. App.—Tyler 1981, no writ); *Holland v. Lesesne*, 350 S.W.2d 859, 862 (Tex. Civ. App.—San Antonio 1961, writ ref'd n.r.e.). That's because determining whether an informal fiduciary duty exists is "determined from the actualities of the relationship between the persons involved" and the unique factual circumstances. *Thigpin v. Locke,* 363 S.W.2d 247, 253; see also, *Tex. Bank & Trust Co.,* 595 S.W.2d 502, 508 (Tex. 1980). Thus, despite Appellants

representations to the contrary, there is no requirement that a confidential relationship must exist prior to, and apart from, the transaction that forms the basis of the lawsuit, that the plaintiff be accustomed to relying on the judgment and advice of the defendant and that the plaintiff lack equal footing.

**IV.    Alternatively, if This Court Holds that these Three Factors are Required for the Creation of an Informal Fiduciary Duty, There is Sufficient Evidence to Support the Trial Court's Judgment.**

A relationship of trust and confidence existed between David Shearer and Corrine Shearer prior to, and apart from, the transaction that forms the basis of the David Shearer's claims. David Shearer's testimony established that while his father was in the Houston VA he became accustomed to getting information and updates from Corrine Shearer concerning his father's medical condition. 4 RR 157-158. Again, they spoke nearly every day by telephone. Corrine Shearer's and David Shearer's testimony showed that the only topic that David and Corrine Shearer spoke about was John Shearer's medical condition. 4 RR 55, 174. David's knowledge of his father's condition was based on the information he obtained from

Corrine Shearer. 4 RR 18. Indeed, Corrine Shearer was David's only source of information, and she knew that David trusted her to give him correct information. 4 RR 59-60. During John Shearer's 33 days in the Houston VA, Corrine Shearer reported to David about five different surgical procedures, in addition to the day to day changes of his father's medical condition. 4 RR 93, 177. Each of these updates were distinct and separate exchanges. 4 RR 175-177. David developed trust and reliance on Corrine Shearer after she relayed information to David day by day, procedure after procedure. The breach of fiduciary duty arose only from the final exchange between David and Corrine Shearer—her ordering all life sustaining machines, life sustaining medications, and nutritional support be withdrawn from John Shearer, her ordering the DNR and then concealing that from David. 4 RR 186. Thus, there is sufficient evidence that David Shearer had a relationship of trust and confidence with Corrine Shearer that existed prior to December 7th and 8th and that David was accustomed to receiving advice and judgment from Corrine Shearer.

Next, David was in a weaker position to Corrine Shearer regarding his father. David was unable to stay with his father in Houston, or to regularly visit, due to the extreme challenges David was dealing with at home. David testified that a week or two prior to John Shearer being admitted to the Houston VA., he accidently shot through his index finger, and had to have part of it amputated. 4 RR 155. David worked as a mechanic at Aerosmith Aviation, and received an hourly wage. 4 RR 155. His gun accident caused him to miss over a week of work. 4 RR 155. At the time John Shearer was in the Houston VA, David's son was three-year-old, and his two daughters were seven and twelve years old. 4 RR 156. Additionally, David's wife was diagnosed with a brain tumor over her eyes. 4 RR 155. Thus, while David's father was in the Houston VA, David was trying to take care of his wife, raise three kids, earn enough money to support his family, and finally, recover from his own injury that resulted in losing part of his index finger. Corrine Shearer knew David's wife had been diagnosed with a brain tumor, she knew that David blew part of his finger

off, she knew David was raising three kids, and he was working to support his family. 4 RR 57-58.

These difficult circumstances left David completely dependent on Corrine Shearer to provide him with information about his father's health. David testified that he trusted Corrine Shearer would provide him with accurate information. 4 RR 158. Corrine Shearer was in Houston, she was able to talk to the doctors, she was able to see John and witness his condition every day. 4 RR 72, 83. Because Corrine Shearer was able to be with John Shearer every moment, she occupied a position of dominance and control. Corrine Shearer had all the information, and David was dependent on her to give them the accurate information. Accordingly, the trial court has sufficient evidence to find that a Corrine Shearer was in a position of dominance over David Shearer.

## V. Intentional Infliction of Emotional Distress Represents the Only Available Cause of Action for David to Recover for Corrine Shearer's Wrongful Disposition of John Shearer's Ashes.

Corrine Shearer claims on appeal that David Shearer could have recovered under an invasion of privacy cause of action, and thus cannot

recover under IIED. Appellant's Br. 18. Specifically, Corrine Shearer argues that David could have recovered through his invasion of privacy cause of action under, Texas Health & Safety Code § 711.002. Appellant's Br. 19-20.

In Texas, IIED is a "gap-filler" tort; a tort that was judicially created for the limited purpose of "allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). The purpose of an IIED Cause of action is "to supplement existing forms of recovery by providing a cause of action for egregious conduct that might otherwise go unremedied." *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998).

Invasion of privacy is not an adequate theory of recovery for Corrine Shearer's wrongful taking and disposing of John Shearer's ashes. In Texas, human remains are considered property. See *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377 (Tex. 2012). Thus, Corrine Shearer interfered with David Shearer's property rights. She did not invade David Shearer's

38

solitude, his seclusion, or his private affairs, which is required for invasion of privacy. See *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993). Corrine Shearer took something that belonged to David, that has extreme emotional value and intentionally disposed of without authority and after the rightful owner requested the ashes. As a result, the only possible cause of action available to David Shearer was for conversion or intentional infliction of emotional distress, as noted by the trial judge. 5 RR 10-11.

Moreover, the trial court granted Corrine Shearer's Motion for Directed Verdict on David Shearer's conversion cause of action after the close of evidence. 5 RR 15-16. The trial judge held that "Texas is yet to recognize a conversion claim as to human remains." 5 RR 15. The trial judge noted that fair market damages is a "critical element" for conversion and that remains have no fair market value. 5 RR 15. Consequently, the trial judge held conversion is not an available cause of action. 5 RR 15. Because conversion was not appropriate for this unique factual situation, the IIED gap-filler was necessary to allow recovery for Corrine Shearer's egregious conduct that would otherwise go unremedied.

The Houston Court of Appeals has stated that there is no other cause of action available but intentional infliction of emotion distress for the wrongful treatment of human remains. *Priebe v. A'Hearn*, 2011 Tex. App. LEXIS 2542, *15 (Tex. App.—Houston [1st Dist.] Apr. 6, 2011, no pet.)(mem. op.). In *Priebe*, the court held that because the plaintiff alleged facts in support of her IIED claim, regarding her father's remains that did not support any other cause of action, IIED was the appropriate cause of action to bring. *Id.*

As in *Priebe*, David Shearer established independent facts that support his IIED claim. Thus, David Shearer's claim is not barred because the IIED was based on independent facts not supported by any other cause of action. See *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d at 447.

## PRAYER

For these reasons, David Shearer asks this Court to overrule Corrine Shearer's points of error and affirm the trial courts judgment.

Respectfully submitted,

Carson R. Runge
Attorney for David Shearer
Sloan, Bagley, Hatcher & Perry Law Firm
101 East Whaley St., Longview, TX 75601
903-757.7000 ext.213
Fax: 903-757-7574
crunge@sloanfirm.com
State Bar Number: 24059262

/s/ Carson Runge
Carson Runge

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(1)(3) this is to certify that the Appellee's Brief contains 8,362 words, according to Microsoft Word 2010's word count, which does not include the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix.

/s/ Carson Runge
Carson Runge

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the Appellee's Brief has been served upon the named individuals listed below by electronic service and/or email, in accordance with the Texas Rules of Civil Procedure on April 8, 2015.

J. CHAD PARKER
cparker@theparkerfirm.net
Bar Card No: 15489000
THE PARKER FIRM, P.C.
3808 Old Jacksonville Rd.
Tyler, Texas 75701
(903) 595-4541 - telephone
(903) 595-2864 - facsimile

*/s/ Carson Runge*
Carson Runge

NO. 12-14-00302-CV

IN THE TWELFTH COURT OF APPEALS
TYLER, TEXAS

CORRINE AUGUSTINE NICHOLS HILL SHEARER

*Appellant*

v.

DAVID SHEARER, INDIVIDUALLY AND AS THE INDEPENDENT
ADMINISTRATOR OF THE ESTATE OF JOHN WILLIAM SHEARER, III

*Appellee*

Appeal from the County Court at Law No. 2
Gregg County, Texas

**APPENDIX TO APELLEE'S BRIEF**

       Carson R. Runge
       Attorney for David Shearer
       Sloan, Bagley, Hatcher & Perry Law Firm
       101 East Whaley St., Longview, TX 75601
       Phone: 903-757.7000 ext.213
       Fax: 903-757-7574
       State Bar Number: 24059262

# Table of Contents

Tab 1: Jury Charge

Tab 2: Defendant's Proposed Jury Charge

Tab 3:  Plaintiff David Shearer, Individually and as Independent
     Administrator of the Estate of John William Shearer, III's Second
     Amended Petition

Tab 4: Plaintiffs Demonstrative Exhibit 1

Tab 5:  Tex. R. Civ. P. 272

Tab 6:  Tex. R. Civ. P. 274

Tab 7: Tex. R. Civ. P. 278

Tab 8:  Tex. R. Civ. P. 279

Tab 9: Tex. Health & Safety Code § 166.039

Tab 10: Tex. Health & Safety Code § 711.002

# Jury Charge

FILED
GREGG COUNTY, TEXAS

JUL 0 2 2014

10:26 O'CLOCK A M
BARBARA DUNCAN, DISTRICT CLERK
BY _____, DEPUTY

CAUSE NO. 2011-1919-CCL2

| | | |
|---|---|---|
| DAVID SHEARER, Individually and as | § | IN THE COUNTY COURT |
| Independent Administrator of the Estate | § | |
| of JOHN WILLIAM SHEARER, III | § | |
| | § | AT LAW #2 |
| v. | § | |
| | § | |
| CORRINE AUGUSTINE HILL | § | |
| SHEARER | § | GREGG COUNTY, TEXAS |

## JURY INSTRUCTIONS

**LADIES AND GENTLEMEN OF THE JURY:**

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.
1. Do not let bias, prejudice, or sympathy play any part in your decision.
2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.


True and Correct copy of original filed in the Gregg County District Clerk Office.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise. The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless directed otherwise, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

## DEFINITIONS

1. "DAVID SHEARER" means Plaintiff, David Shearer, in his individual capacity.
2. "CORRINE SHEARER" means Defendant, Corrine Augustine Nichols Hill Shearer.
3. "JOHN SHEARER" means John William Shearer, III, Deceased.


True and Correct copy of original filed in the Gregg County District Clerk Office.

**QUESTION 1:**

Did CORRINE SHEARER intentionally intrude into JOHN SHEARER's solitude, seclusion, or private affairs or concerns in a manner that would be highly offensive to a reasonable person?

Answer "Yes" or "No":

**ANSWER:** NO

True and Correct copy of original filed in the Gregg County District Clerk Office.

**QUESTION 2:**

Answer the following question only if you answered "yes" to Question 1. Otherwise, do not answer the following question.

What sum of money, if paid now in cash, would fairly and reasonably compensate JOHN SHEARER for mental anguish sustained in the past, if any, resulting from the occurrence in question?

"Mental anguish" means the conscious emotional pain, torment, and suffering experienced by JOHN SHEARER before his death as a result of the intentional invasion of JOHN SHEARER's solitude, seclusion or privacy.

Consider the element of damage listed above and none other. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer, in dollars and cents, for damages, if any.

**ANSWER:** _____


True and Correct copy of original filed in the Gregg County District Clerk Office.

**QUESTION 3:**

Did CORRINE SHEARER intentionally intrude into DAVID SHEARER's solitude, seclusion, or private affairs or concerns in a manner that would be highly offensive to a reasonable person?

Answer "Yes" or "No":

**ANSWER:** NO

True and Correct copy of original filed in the Gregg County District Clerk Office.

Answer the following question only if you answered "Yes" to Question 3. Otherwise, do not answer the following question.

**QUESTION 4:**

What sum of money, if paid now in cash, would fairly and reasonably compensate DAVID SHEARER for his damages, if any, that resulted from the occurrence in question?

Consider the elements of damage listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollar and cents, for damages, if any.

1. Mental anguish sustained in the past.

   "Mental anguish" means the emotional pain, torment, and suffering experienced by DAVID SHEARER as a result of the intentional invasion of DAVID SHEARER's solitude, seclusion or privacy.

   **ANSWER:**_____

2. Mental anguish sustained in the future.

   **ANSWER:** _____


True and Correct copy of original filed in the Gregg County District Clerk Office.

**QUESTION 5:**

Did a relationship of trust and confidence exist between DAVID SHEARER and CORRINE SHEARER at the time of the occurrence?

A relationship of trust and confidence existed if DAVID SHEARER justifiably placed trust and confidence in CORRINE SHEARER to act in DAVID SHEARER's best interest. DAVID SHEARER's subjective trust and feelings alone do not justify transforming arms-length dealings into a relationship of trust and confidence.

Answer "Yes" or "No":

**ANSWER:** Yes

True and Correct copy of original filed in the Gregg County District Clerk Office.

Answer the following question only if you answered "Yes" to Question 5. Otherwise, do not answer the following question.

**QUESTION 6:**

Did CORRINE SHEARER fail to comply with her fiduciary duty to DAVID SHEARER?

Because a relationship of trust and confidence existed between them, CORRINE SHEARER owed DAVID SHEARER a fiduciary duty. To prove CORRINE SHEARER failed to comply with her fiduciary duty, DAVID SHEARER must show—

1. The occurrence in question was not fair and equitable to DAVID SHEARER; or

2. CORRINE SHEARER did not make reasonable use of the confidence that DAVID SHEARER placed in her; or

3. CORRINE SHEARER failed to act in the utmost good faith or exercise the most scrupulous honesty toward DAVID SHEARER; or

4. CORRINE SHEARER placed her own interests before DAVID SHEARER's, used the advantage of her position to gain a benefit for herself at the expense of DAVID SHEARER, or placed herself in a position where her self-interest might conflict with her obligations as a fiduciary; or

5. CORRINE SHEARER failed to deal openly and to fully and fairly disclose all important information to DAVID SHEARER concerning the occurrences in question.

Answer "Yes" or "No":

**ANSWER:** Yes


True and Correct copy of original filed in the Gregg County District Clerk Office.

Answer the following question only if you answered "Yes" to Question 5 and "Yes" to Question 6. Otherwise, do not answer the following question.

**QUESTION 7:**

What sum of money, if paid now in cash, would fairly and reasonably compensate DAVID SHEARER for his damages, if any, that resulted from the occurrence in question?

Consider the elements of damage listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollar and cents, for damages, if any.

1. Mental anguish sustained in the past.

"Mental anguish" means the emotional pain, torment, and suffering experienced by DAVID SHEARER because of CORRINE SHEARER's failure to comply with her fiduciary duty.

ANSWER: 35,000

2. Mental anguish sustained in the future.

ANSWER: 0


True and Correct copy of original filed in the Gregg County District Clerk Office.

Answer the following question only if you answered "Yes" to Question 7. Otherwise, do not answer the following question.

**QUESTION 8:**

To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of ten or more jurors. Otherwise, you must not answer the following question.

Do you find by clear and convincing evidence that the harm to DAVID SHEARER resulted from malice?

"Malice" means a specific intent by CORRINE SHEARER to cause substantial harm to DAVID SHEARER.

Answer "Yes" or "No":

**ANSWER:** Yes


True and Correct copy of original filed in the Gregg County District Clerk Office.

**QUESTION 9:**

Did CORRINE SHEARER intentionally inflict severe emotional distress on DAVID SHEARER?

Intentional infliction of emotion distress occurs when the defendant acts intentionally or recklessly with extreme and outrageous conduct to cause the plaintiff emotional distress and the emotional distress suffered by the plaintiff was severe.

"Extreme and outrageous conduct" occurs only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

Answer "Yes" or "No."

**ANSWER:** Yes


True and Correct copy of original filed in the Gregg County District Clerk Office.

Answer the following question only if you answered "Yes" to Question 9. Otherwise, do not answer the following question.

**QUESTION 10:**

What sum of money, if paid now in cash, would fairly and reasonably compensate DAVID SHEARER for his damages, if any, that resulted from the occurrence in question?

Consider the elements of damage listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollar and cents, for damages, if any.

1. Mental anguish sustained in the past.

"Mental anguish" means the emotional pain, torment, and suffering experienced by DAVID SHEARER as a result of the intentional infliction of severe emotional distress.

ANSWER: 1,500

2. Mental anguish sustained in the future.

ANSWER: Ø


True and Correct copy of original filed in the Gregg County District Clerk Office.

**Presiding Juror:**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.
2. The presiding juror has these duties:
   a. have the complete charge read aloud if it will be helpful to your deliberations;
   b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;
   c. give written questions or comments to the bailiff who will give them to the judge;
   d. write down the answers you agree on;
   e. get the signatures for the verdict certificate; and
   f. notify the bailiff that you have reached a verdict.

**Instructions for Signing the Verdict Certificate:**

1. You may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.
2. If 10 jurors agree on every answer, those 10 jurors sign the verdict. If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.
3. All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

JUL 0 2 2014

@ 10:24 A.M.

_____
JUDGE PRESIDING


True and Correct copy of original filed in the Gregg County District Clerk Office.

FILED
GREGG COUNTY, TEXAS

JUL 02 2014

O'CLOCK ___ M
BARBARA DUNCAN, DISTRICT CLERK
BY_____, DEPUTY

## VERDICT CERTIFICATE AS TO QUESTIONS

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our Verdict.

**CHECK ONE:**

_____ **Our verdict is unanimous.** All Twelve (12) of us have agreed to each and every answer. The presiding juror has signed the certificate for all 12 of us.

_Jordan Farmer_
Signature of Presiding Juror

_Jordan Farmer_
Printed Name of Presiding Juror

✓ **Our verdict is not unanimous.** Ten (10) of us have agreed to each and every answer and have signed the certificate below.

| Jurors' Signatures | Jurors' Printed Names |
|---|---|
| 1. | Pam Rice |
| 2. Hope Sellers | Hope Sellers |
| 3. | |
| 4. | Cathy Nobles |
| 5. | |
| 6. | Sonya Colbert |
| 7. | |
| 8. | Gonzalo V Rojas |
| 9. | Travis Null |
| 10. Jorda Farmer | Jordan Farmer |
| 11. | |



True and Correct copy of original filed in the Gregg County District Clerk Office.

## VERDICT CERTIFICATE AS TO QUESTIONS 5, 6, 7 & 8

We, the jury, have answered the above and foregoing questions 5, 6, 7 & 8 as herein indicated, and herewith return same into court as our Verdict.

_____ **Our verdict is unanimous.** I certify that the jury was unanimous in answering questions 5, 6, 7 & 8. All Twelve (12) of us have agreed to each and every answer. The presiding juror has signed the certificate for all 12 of us.


Signature of Presiding Juror

Printed Name of Presiding Juror

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS COUNTY OF GREGG
I hereby certify that the above, consisting of 15 pages, is a true and correct copy of the original record on file in the District Clerk's Office of Gregg County, Texas
This 9th day of _____, 2014
BARBARA DUNCAN, DISTRICT CLERK
BY: _____, Deputy

True and Correct copy of original filed in the Gregg County District Clerk Office.

# Defendant's Proposed Jury Charge

## CAUSE NO. 2011-1919-CCL2

| | | |
|---|---|---|
| **DAVID SHEARER, Individually and as** | § | **IN THE COUNTY** |
| **Independent Administrator of the Estate** | § | |
| **of JOHN WILLIAM SHEARER, III,** | § | |
| **and LAWYNDA OLSON** | § | |
| | § | **COURT AT LAW NO. 2** |
| | § | |
| **vs.** | § | |
| | § | |
| **CORRINE AUGUSTINE NICHOLS** | § | **OF GREGG COUNTY, TEXAS** |
| **HILL SHEARER** | § | |

## DEFENDANT'S PROPOSED JURY CHARGE

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

Here are the instructions for answering the questions.

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4.     If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.     All the questions and answers are important. No one should say that any question or answer is not important.

6.     Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7.     Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8.     Do not answer questions by drawing straws or by any method of chance.

9.     Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10.     Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11.     Unless otherwise instructed the answers to the questions must be based on the decision of at least ten of the twelve jurors. The same ten jurors must agree on every answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

**QUESTION NO. 1**

Did Corrine Shearer, without consent, intentionally intrude on John William Shearer, III's solitude, seclusion or privacy by ordering the removal of life-sustaining treatment from him?

You must find by a preponderance of the evidence that the intrusion was substantial enough that it was unreasonable, unjustified, or unwarranted.[1]

You are instructed that consent is a defense to an intentional intrusion on solitude, seclusion or privacy if:

A) John William Shearer, III gave his effective consent to Corrine Shearer for the intrusion

**or**

B) Corrine Shearer had a reasonable belief that John William Shearer, III consented to the intrusion

Answer "Yes" or "No."

Answer: _____

---

[1] *Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex. App. – Tyler 2006, no pet.)(citing *Billings v. Atkinson*, 489 S.W.2d 858, 869 (Tex. 1973).

**QUESTION NO. 2**

Did Corrine Shearer intentionally intrude on David Shearer's solitude, seclusion or privacy by ordering the removal of life-sustaining treatment from John William Shearer, III?

You must find by a preponderance of the evidence that the intrusion was substantial enough that it was unreasonable, unjustified, or unwarranted.[2]

You are instructed that consent is a defense to an intentional intrusion on solitude, seclusion or privacy if:

A) John William Shearer, III gave his effective consent to Corrine Shearer for the intrusion

**or**

B) Corrine Shearer had a reasonable belief that John William Shearer, III consented to the intrusion

Answer "Yes" or "No."

Answer: _____

---

[2] *Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex. App. – Tyler 2006, no pet.)(citing *Billings v. Atkinson*, 489 S.W.2d 858, 869 (Tex. 1973).

**QUESTION NO. 3**

Did a relationship of trust and confidence exist between Corrine Shearer and David Shearer?

A relationship of trust and confidence existed if David Shearer justifiably placed trust and confidence in Corinne Shearer to act in David Shearer's best interest. David Shearer's subjective trust and feelings alone do not justify transforming arm's-length dealings into a relationship of trust and confidence.

Answer "Yes" or "No."

Answer: _____

If you answered "Yes" to Question No. 3, then answer Question No. 4. Otherwise, do not answer Question No. 4.

**QUESTION NO. 4**

Did Corrine Shearer fail to comply with her fiduciary duty to David Shearer?

Because a relationship of trust and confidence existed between them, Corrine Shearer owed David Shearer a fiduciary duty. To prove Corrine Shearer failed to comply with her fiduciary duty, David Shearer must show—

1.      the transaction in question was not fair and equitable to David Shearer; or

2.      Corrine Shearer did not make reasonable use of the confidence that David Shearer placed in her; or

3.      Corrine Shearer failed to act in the utmost good faith or exercise the most scrupulous honesty toward David Shearer; or

4.      Corrine Shearer placed her own interests before David Shearer's, used the advantage of her position to gain a benefit for herself at the expense of David Shearer, or placed herself in a position where her self-interest might conflict with her obligations as a fiduciary; or

5.      Corrine Shearer failed to fully and fairly disclose all important information to David Shearer concerning the transaction.

Answer "Yes" or "No."

Answer: _____

If you answered "Yes" to Question No. 1, then answer the following Question. Otherwise, do not answer the following Question.

**QUESTION NO. 5**

What sum of money would have fairly and reasonably compensated John William Shearer, III for—

      1.      Mental anguish.

"Mental anguish" means the conscious emotional pain, torment, and suffering experienced by John William Shearer, III before his death as a result of the intentional invasion of John William Shearer, III's solitude, seclusion or privacy.

Answer in dollars and cents for damages, if any.

Answer: _____

Answer the following question only if you unanimously answered "Yes" to Question No. 1. Otherwise, do not answer the following question.

To answer "Yes" to any part of the following question, your answer must be unanimous. You may answer "No" to any part of the following question only upon a vote of ten or more jurors. Otherwise, you must not answer that part of the following question.

**QUESTION NO. 6**

Do you find by clear and convincing evidence that the harm to John William Shearer, III resulted from malice?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by Corrine Shearer to cause substantial injury or harm to John William Shearer, III.

Answer "Yes" or "No."

Answer: _____

If you answered "Yes" to Question No. 2, then answer the following Question. Otherwise, do not answer the following Question.

**QUESTION NO. 7**

What sum of money would fairly and reasonably compensate David Shearer for—

      1.      Mental anguish sustained in the past.

      2.      Mental anguish that, in reasonable probability, David Shearer will sustain in the future.

"Mental anguish" means the conscious emotional pain, torment, and suffering experienced by David Shearer as a result of the intentional invasion of David Shearer's solitude, seclusion or privacy.

Answer in dollars and cents for damages, if any.

Answer: _____

Answer the following question only if you unanimously answered "Yes" to Question No. 2. Otherwise, do not answer the following question.

To answer "Yes" to any part of the following question, your answer must be unanimous. You may answer "No" to any part of the following question only upon a vote of ten or more jurors. Otherwise, you must not answer that part of the following question.

**QUESTION NO. 8**

Do you find by clear and convincing evidence that the harm to David Shearer resulted from malice?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by Corrine Shearer to cause substantial injury or harm to David Shearer.

Answer "Yes" or "No."

Answer: _____

If you answered "Yes" to Question No. 4, then answer the following Question. Otherwise, do not answer the following Question.

## QUESTION NO. 9

What sum of money, if paid now in cash, would fairly and reasonably compensate David Shearer for his damages, if any, resulting from the breach of fiduciary duty?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

1.      Mental anguish sustained in the past.

"Mental anguish" means the emotional pain, torment, and suffering experienced by David Shearer because of Corrine Shearer's breach of fiduciary duty.

Answer: _____

2.      Mental anguish that, in reasonable probability, David Shearer will sustain in the future.

Answer: _____

Answer the following question regarding Corrine Shearer only if you unanimously answered "Yes" to Question No. 4. Otherwise, do not answer the following question.

To answer "Yes" to any part of the following question, your answer must be unanimous. You may answer "No" to any part of the following question only upon a vote of ten or more jurors. Otherwise, you must not answer that part of the following question.

**QUESTION NO. 10**

Do you find by clear and convincing evidence that the harm to David Shearer resulted from malice?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by Corrine Shearer to cause substantial injury or harm to David Shearer.

Answer "Yes" or "No."

Answer: _____

**Plaintiff David Shearer, Individually and as Independent Administrator of the Estate of John William Shearer, III's Second Amended Petition**

FILED
GREGG COUNTY, TEXAS

MAR 1 7 2014

O'CLOCK
BARBARA DUNCAN, DISTRICT CLERK
BY_____,DEPUTY

| | | |
|---|---|---|
| DAVID SHEARER, Individually and as | § | IN THE COUNTY COURT |
| Independent Administrator of the Estate | § | |
| of JOHN WILLIAM SHEARER, III, | § | |
| and LAWYNDA OLSEN | § | |
| Plaintiffs. | § | |
| | § | |
| vs. | § | AT LAW #2 |
| | § | |
| CORRINE AUGUSTINE HILL | § | |
| SHEARER | § | |
| Defendant. | § | GREGG COUNTY, TEXAS |

## PLAINTIFF, DAVID SHEARER, INDIVIDUALLY AND AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF JOHN WILLIAM SHEARER, III'S SECOND AMENDED PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** Plaintiff, DAVID SHEARER, Individually and as Independent Administrator of the Estate of JOHN WILLIAM SHEARER, III, complaining of and against Defendant CORRINE AUGUSTINE NICHOLS HILL SHEARER and files this his Second Amended Petition, and for cause of action would respectfully show this Honorable Court as follows:

## A. DISCOVERY CONTROL PLAN

1. Plaintiff intend that Discovery be conducted pursuant to a Level 3 discovery control plan. Tex. R. Civ. P. 190.4.

## B. PARTIES

2. Plaintiff, DAVID SHEARER, Individually and as Independent Administrator of the Estate of John William Shearer, III, an individual, is a resident of Gregg County, Texas. The last four numbers of Plaintiff's social security number are XXX-XX-2817.

---

3. Plaintiff, LAWYNDA OLSEN, an individual, is a resident of Rockwall County, Texas. The last four numbers of Plaintiff's social security number are XXX-XX-2210.

4. Defendant, CORINNE AUGUSTINE NICHOLS HILL SHEARER, is an individual who resides in Gregg County has been served and has answered herein.

## C. JURISDICTION & VENUE

5. The Court has jurisdiction over Defendant because Defendant, Corrine Augustine Nichols Hill Shearer is a Texas resident and resides in Gregg County. The Court has jurisdiction over the controversy because Plaintiff was injured and seek damages in excess of the minimal jurisdictional limits of this Court.

6. Venue is proper in Gregg County pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(2) because Defendant is a natural person and is a resident of Gregg County, Texas.

## D. FACTS

7. This case arises from Defendant Corrine Augustine Nichols Hill Shearer's decision, without any right or authority, to order doctors to remove life sustaining medicines and machines from her ex-husband, John William Shearer, III ("John Shearer") thus causing John Shearer to ultimately pass away and then, again without any right or authority, disposing of his ashes. John Shearer is the father of Plaintiff David Shearer. John Shearer and Defendant Corrine Augustine Nichols Hill Shearer married in 1991. On February 1, 2008, John Shearer and Defendant legally divorced in Gregg County, Texas. John Shearer and Defendant lived in the same house after their divorce. By her own admission, Defendant Corrine Augustine Nichols Hill Shearer and John Shearer never remarried and were never common law married after their divorce was finalized on February 1, 2008.

8.     On November 2, 2009, John Shearer became ill and went to Overton Brooks VA Medical Center in Shreveport, Louisiana, where he was admitted. Defendant Corrine Augustine Nichols Hill Shearer accompanied him to the hospital. On November 5, 2009, doctors at Overton Brooks VA Medical Center in Shreveport, Louisiana decided to transfer John Shearer to the The Michael E. DeBakey VA Medical Center ("Houston VA Medical Center") in Houston and sought the family's approval. After discovering that Defendant Corrine Augustine Nichols Hill Shearer was John Shearer's ex-wife, a social worker met with Defendant and informed her she had no authority to make medical decisions on behalf of John Shearer and that the people with the legal authority to make medical decisions on behalf of John Shearer were his children, including Plaintiff David Shearer. John Shearer was transferred to the Houston VA Medical Center on November 6, 2009.

9.     Defendant Corrine Augustine Nichols Hill Shearer accompanied John Shearer to the hospital in Houston and stayed at the Fisher House. Knowing that she did not have any authority to make medical decisions on behalf of John Shearer, Defendant Corrine Augustine Nichols Hill Shearer fraudulently represented to the doctors in Houston that she was John Shearer's wife. Plaintiff David Shearer, had no idea that Defendant Corrine Augustine Nichols Hill Shearer was fraudulently representing herself to the doctors as his father's wife. While his father was at the Houston VA Medical Center, Plaintiff David Shearer, was not able to stay in Houston with his father because he had to work to support his wife and three children. As such, Plaintiff David Shearer called Defendant Corrine Augustine Nichols Hill Shearer on a daily basis, usually in the late afternoon, to get updates on his father's condition. Plaintiff David Shearer was able to go down to Houston to visit with and see his father John Shearer in late November, 2009.

10. After David Shearer returned to his home, he was informed by Defendant Corrine Augustine Nichols Hill Shearer that his father's health had improved. Almost daily, David Shearer spoke to Defendant to check on his father's health and was informed by Defendant that his father's health was either improving or no worse than when David Shearer was in Houston to see him.

11. Around 11:00 a.m. on December 8, 2009, however, Defendant Corrine Augustine Nichols Hill Shearer, having fraudulently informed doctors that she was John Shearer's wife, inexplicably ordered that all "care be withdrawn" from John Shearer, including all antibiotics and nutritional support, and requested that she be "notified when the patient dies." Additionally, as noted by Dr. Subramanian in the medical records, "the patient's wife, Ms. Corinne Shearer. . . . decided to make her husband, DNR." Under the belief that Defendant was in fact John Shearer's wife, the doctors obeyed Defendant's orders and withdrew all care from John Shearer, including: (1) a ventilator, (2) all antibiotics, and (3) all nutritional support. All care was withdrawn from John Shearer by 3:48 p.m on December 8, 2009. Pursuant to his usual routine, Plaintiff David Shearer called Defendant Corrine Augustine Nichols Hill Shearer around 6:00 p.m. on December 8, 2009 to check on his dad's well-being. During that conversation, Defendant Corrine Augustine Nichols Hill Shearer failed to mention that she had ordered all life sustaining care be withdrawn from his father earlier that day. As a result, John Shearer died alone, without the comfort of his son, David Shearer, at 4:00 a.m. on December 9, 2009. Around 8:00 a.m. on December 9, 2009, Angela Shearer, David Shearer's wife, was informed by Defendant that John Shearer had died. Defendant failed to mention to Mrs. Shearer that Defendant had ordered all life sustaining medicines and machines withdrawn from John Shearer or that Defendant ordered a "do not resuscitate" on John Shearer the day before. Angela Shearer then informed her husband, Plaintiff David Shearer, who was shocked

to hear his father had passed having been told by Defendant that his health was improving. Plaintiff David Shearer was devastated.

12. On December 9, 2009, the day John Shearer died, without the knowledge or consent of Plaintiff David Shearer, and still falsely representing to be the wife of John Shearer, Defendant Corrine Augustine Nichols Hill Shearer instructed, without any authority, the hospital to deliver John Shearer's body to Cremate Texas, Inc. so his body could be cremated. As a result, Plaintiff David Shearer, never had an opportunity to see his father's body, nor say goodbye. Pursuant to Defendant's orders John Shearer's body was cremated.

13. After learning that his father's body was cremated, and before John Shearer's ashes were sent to Defendant, David Shearer informed Defendant of his intent to take his dad's ashes. Despite informing Defendant that he wanted his father's ashes, Defendant disposed of John Shearer's ashes without the knowledge and consent of Plaintiff.

14. Plaintiff David Shearer learned the horrific news that Defendant had disposed of his father's ashes from his aunt. Plaintiff David Shearer did not find out that Defendant Corrine Augustine Nichols Hill Shearer ordered that all life sustaining care be withdrawn from his father until January of 2010, after requesting a copy of John Shearer's medical records and reviewing them.

## E. CAUSES OF ACTION ON BEHALF OF DAVID SHEARER, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF JOHN WILLIAM SHEARER, III

15. David Shearer, as Independent Administrator of the Estate of John Shearer brings the following causes of action for personal injury pursuant to Texas Civil Practices and Remedies Code § 71.021 to recover for the mental anguish that John William Shearer, III suffered until his death.

# I.  INVASION OF PRIVACY: INTENTIONAL INTRUSION ON SECLUSION

16.    Pursuant to Texas Health and Safety Code section 166.039(b), Defendant Corrine Augustine Nichols Hill Shearer never had the authority or right to make treatment decisions concerning John Shearer. Defendant intentionally intruded on John William Shearer, III's private affairs, namely his decisions regarding the medical care provided to him in the event he became unable to make those decisions for himself and the people who were supposed to make medical decisions for him in the event he was unable to make the choices himself, when Defendant ordered, without any authority, the physicians at The Michael E. DeBakey VA Medical Center to withdraw all care, including a ventilator, antibiotics and nutritional support from John Shearer  and ordered physicians to not resuscitate John Shearer.  Defendant Corrine Augustine Nichols Hill Shearer was not married to John Shearer at the time of his death, was not his legal guardian and did not have a medical power of attorney.  Accordingly, Defendant Corrine Augustine Nichols Hill Shearer did not have the legal authority to make medical decisions for John Shearer.

17.    Under Texas law, Plaintiff  David Shearer had the authority to make medical treatment decisions for John William Shearer, III. Texas Health & Safety Code § 166.039(b).

18.    Defendant's intrusion into John Shearer's private affairs, namely his decisions regarding the medical care provided to him in the event he became unable to make those decisions for himself and the people who were supposed to make medical decisions for him in the event he was unable to make the choices himself, would be highly offensive to a reasonable person.

19.    Defendant's intentional intrusion on John Shearer's private matters caused injuries to John Shearer by preventing John's children from being with him during his final days/hours.

## F. INDEPENDENT CAUSES OF ACTION ON BEHALF OF DAVID SHEARER

## I. INVASION OF PRIVACY: INTENTIONAL INTRUSION ON SECLUSION

20. Defendant intentionally intruded on David Shearer's private affairs, namely the medical treatment decisions regarding his father, i.e., whether to withdraw or maintain life support for his father, John Shearer and whether to order a DNR, when Defendant ordered, without any authority, the physicians at The Michael E. DeBakey VA Medical Center to withdraw all care, including a ventilator, antibiotics and nutritional support from John Shearer, and ordered physicians to not resuscitate John Shearer. Defendant Corrine Augustine Nichols Hill Shearer was not married to John Shearer at the time of his death, was not his legal guardian and did not have a medical power of attorney. Accordingly, Defendant Corrine Augustine Nichols Hill Shearer did not have the legal authority to make medical decisions for John Shearer.

21. Under Texas law, Plaintiff David Shearer had the authority to make medical treatment decisions for John Shearer. Tex. Health & Safety Code § 166.039(b).

22. Defendant's intrusion into Plaintiff's private affairs, namely the decisions whether to withdraw or maintain life support for his father, John Shearer, and whether to order a DNR, would be highly offensive to a reasonable person.

23. Defendant's wrongful acts caused injuries to Plaintiff which resulted in the following damages, severe mental anguish.

## II. BREACH OF FIDUCIARY DUTY

24. Plaintiff David Shearer put his trust and confidence in Defendant. Specifically, Plaintiff called Defendant on a daily basis to check up and get an update on his father's condition. Plaintiff trusted that Defendant would accurately inform them of the medical condition of his father

and inform him, if the time ever came, that Plaintiff had to make a decision whether or not to have doctors withdraw life sustaining medicines and machines from his father.

25. Defendant breached this fiduciary relationship by: (1) intentionally misrepresenting John Shearer's medical condition to Plaintiff, (2) usurping Plaintiff's right to make medical decisions for his father, (3) failing to inform Plaintiff that she had ordered, without any authority, all life sustaining medicines and machines be withdrawn from John Shearer, (4) failing to inform Plaintiff that his father was dying after inexplicably ordering all life sustaining medicines and machines be withdrawn from John Shearer, (5) and failing to inform Plaintiff that Defendant was intentionally misrepresenting herself to be the wife of John Shearer.

26. Defendant's breach of fiduciary duty proximately caused injury to Plaintiff, including severe mental anguish. Moreover, Defendant's breach of duty benefitted Defendant as Defendant (1) had the opportunity to say her goodbye's to John Shearer, (2) had the opportunity to dispose of John Shearer's ashes as she deemed fit, and (3) seized John Shearer's business assets after declaring a landlord's lien for failure to pay rent on the property John Shearer rented from Defendant. Indeed, Defendant gave "notice" to John Shearer to remove his business assets and pay back rent by placing a notice on the desk of John Shearer AFTER his death.

## III. CONVERSION OF JOHN WILLIAM SHEARER, III'S ASHES

27. After the death of his father, Plaintiff David Shearer had the right to the immediate possession of his father's body, including his ashes. Due to Defendant's intentional misrepresentations that she was John Shearer's wife, Defendant wrongfully acquired possession of John Shearer's body and later, his ashes.

28.    Without any authority or right, Defendant Corrine Augustine Nichols Hill Shearer wrongfully exercised dominion and control over John Shearer's body, and later, his ashes. In fact, Defendant intentionally disposed of John Shearer's ashes, without informing Plaintiff she was going to do so, and knowing that Plaintiff wanted his father's ashes.

29.    Defendant Corrine Augustine Nichols Hill Shearer's conduct caused Plaintiff injury, specifically the loss of the intrinsic value of their father's ashes.

## IV.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

30.    Plaintiff's claims for intentional infliction of emotional distress are based on two separate and distinct actions of Defendant Corrine Augustine Nichols Hill Shearer. Plaintiff's first claim for intentional infliction of emotional distress is premised on Defendant's action of intentionally and knowingly usurping Plaintiff's authority and right to make medical treatment decisions for their father, subsequently failing to inform them that Defendant had ordered all life sustaining medicines and machines withdrawn from their father, and thus taking away Plaintiff's ability to be with his father during his final hours, and consequently causing his father to pass away alone. Plaintiff's second claim for intentional infliction of emotional distress is premised on Defendant's act of disposing of John Shearer's ashes without the consent or knowledge of Plaintiff and directly contrary to Plaintiff's wishes that were known by Defendant.

31.    Defendant Corrine Augustine Nichols Hill Shearer acted intentionally and/or recklessly when she instructed, without any authority or right, the physicians at The Michael E. DeBakey VA Medical Center to withdraw all life sustaining medicines and machines from John Shearer, instructed the physicians not resuscitate John Shearer, concealed the fact that she had made

such orders to the physicians from Plaintiff on December 8, 2009, and thus intentionally eliminated any chance that Plaintiff be with his father during his final hours.

32.     Defendant Corrine Augustine Nichols Hill Shearer's conduct in instructing, without any authority or right, the physicians at The Michael E. DeBakey VA Medical Center to withdraw all life sustaining medicines and machines from John Shearer, instructing the physicians not resuscitate John Shearer, intentionally concealing the fact that she had made such orders to the physicians from Plaintiff on December 8, 2009, and thus intentionally eliminated any chance that Plaintiff be with his father during his final hours, was extreme and outrageous and this conduct by Defendant proximately caused the Plaintiff severe emotional distress in the past, and will likely continue well into the future.

33.     Additionally, Defendant Corrine Augustine Nichols Hill Shearer acted intentionally and/or recklessly when she disposed, without any right or authority, the ashes of John Shearer without the consent or knowledge of Plaintiff.

34.     Defendant Corrine Augustine Nichols Hill Shearer's conduct in disposing of John Shearer's ashes without the knowledge and consent of Plaintiff was extreme and outrageous and this conduct by Defendant proximately caused the Plaintiff severe emotional distress in the past, and will likely continue well into the future.

## G. DAMAGES

35.     Plaintiff David Shearer sues for the mental anguish he has suffered as the result of the conduct of Defendant Corrine Augustine Nichols Hill Shearer.

## H. EXEMPLARY DAMAGES

36.     The conduct of Defendant as alleged herein is of such character as to make said Defendant liable to David Shearer, Individually and as the Independent Administrator of the Estate of John William Shearer, III, for exemplary damages. The conduct of said Defendant was done with malice and/or in heedless and reckless disregard of the rights of the Plaintiff David Shearer, Individually and as the Independent Administrator of the Estate of John William Shearer, III, and involved such an entire want of care as to indicate that it was a result of conscious indifference to the rights, welfare and safety of Plaintiff. Plaintiff seeks exemplary damages, pursuant to TEX. CIV. PRAC. & REM. CODE §41.003(a)(2), in such an amount as may be found to be proper under the facts and circumstances. Plaintiff specifically pleads the applicability of TEX. CIV. PRAC. & REM. CODE § 41.008(c)(1), (4), (7).

## I. DOCUMENTS TO BE USED

37.     Pursuant to TEX. R. CIV. P. 193.7, Plaintiff intend to use all documents exchanged and produced between the parties, including, but not limited to, correspondence and discovery responses during the trial of the above-entitled and numbered cause.

## J. JURY DEMAND

38.     Plaintiff hereby demands a jury for the final trial of this matter.

## K. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant CORRINE AUGUSTINE NICHOLS HILL SHEARER be cited to appear and answer, and that on final trial Plaintiff have:

a. Judgment against Defendant in a sum in excess of the minimum jurisdictional limits of the Court;

b. Exemplary damages;

c. Pre-judgment and post-judgment interest as provided by law;

d. Costs of court; and

e. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,
SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM

CARSON R. RUNGE
State Bar No. 24059262
101 East Whaley Street
P. O. Drawer 2909
Longview, Texas 75606
Telephone:     (903) 757-7000
Facsimile:     (903) 757-7574
ATTORNEY FOR PLAINTIFF DAVID SHEARER

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served on the following via United States Certified Mail Return Receipt Requested pursuant to the Texas Rules of Civil Procedure this 17 day of March 2014:

Mr. J. Chad Parker
The Parker Firm, P.C.
3808 Old Jacksonville Road
Tyler, Texas 75701

CARSON R. RUNGE

**Plaintiffs Demonstrative Exhibit 1**

| Date | Time | Duration | From | To |
|---|---|---|---|---|
| Nov. 3 | 2:00 PM | 0:00 | John | David |
| | 2:02 PM | 1:14 | John | David |
| | 3:50 PM | 6:24 | David | John |
| Nov. 4 | 2:31 PM | :25 | David | John |
| | 2:42 PM | 0:00 | John | David |
| | 2:42 PM | 1:33 | John | David |
| | 2:46 PM | 14:10 | David | John |
| | 5:29 PM | 3:03 | John | David |
| Nov. 5 | 1:02 PM | 9:50 | David | John |
| Nov. 6 | 6:52 AM | 0:00 | Corrine | David |
| | 6:53 AM | 1:14 | Corrine | David |
| | 8:11 AM | 11:20 | David | John |
| | 1:23 PM | 7:05 | Corrine | David |
| | 4:56 PM | 12:52 | David | Corrine |
| Nov. 7 | 10:56 AM | 6:56 | Corrine | David |
| Nov. 8 | 12:59 PM | 1:18 | Corrine | David |
| | 1:14 PM | :27 | David | Corrine |
| | 2:19 PM | 9:12 | Corrine | David |
| Nov. 9 | 3:40 PM | 5:59 | David | Corrine |
| Nov. 10 | 10:07 AM | 2:20 | David | Corrine |
| Nov. 11 | 2:48 PM | 21:56 | David | Corrine |
| Nov. 12 | 2:54 PM | :34 | David | Corrine |
| | 3:22 PM | 0:00 | Corrine | David |
| | 3:22 PM | 0:00 | Corrine | David |
| | 3:31 PM | 0:00 | Corrine | David |
| | 3:32 AM | 11:00 | David | Corrine |
| | 3:33 PM | 1:32 | Corrine | David |
| Nov. 13 | 3:59 PM | 3:25 | David | Corrine |
| Nov. 14 | 2:31 PM | 4:58 | David | Corrine |
| Nov. 15 | | | | |
| Nov. 16 | 10:04 AM | 1:35 | David | Corrine |
| | 10:06 AM | 5:29 | David | Corrine |
| Nov. 17 | 3:05 PM | 8:48 | David | Corrine |
| Nov. 18 | | | | |
| Nov. 19 | | | | |
| Nov. 20 | 8:04 AM | 9:55 | David | Corrine |
| Nov. 21 | | | | |
| Nov. 22 | | | | |
| Nov. 23 | 4:25 PM | :26 | David | Corrine |
| Nov. 24 | 5:05 PM | 9:57 | David | Corrine |
| Nov. 25 | 3:45 PM | 11:00 | David | Corrine |
| Nov. 26 | | | | |
| Nov. 27 | 11:42 AM | 6:57 | David | Corrine |
| Nov. 28 | 9:39 AM | :46 | David | Corrine |
| | 5:31 PM | 0:00 | Corrine | David |
| | 5:32 PM | :42 | Corrine | David |
| | 5:34 PM | :32 | David | Corrine |
| | 6:00 PM | :24 | David | Corrine |
| Nov. 29 | 11:07 AM | 0:00 | Corrine | David |
| | 11:08 AM | 3:58 | David | Corrine |
| | 11:09 AM | 2:13 | Corrine | David |
| Nov. 30 | 11:39 AM | 6:09 | David | Corrine |
| Dec. 1 | 3:47 PM | 12:10 | David | Corrine |
| Dec. 2 | 3:38 PM | :11 | David | Corrine |
| | 3:52 PM | 3:25 | David | Corrine |
| Dec. 3 | 4:38 PM | 11:31 | David | Corrine |
| Dec. 4 | 4:49 PM | :19 | David | Corrine |
| Dec. 5 | 11:10 AM | 4:36 | David | Corrine |
| Dec. 6 | 3:01 PM | :11 | David | Corrine |
| | 6:23 PM | :21 | David | Corrine |
| Dec. 7 | 5:00 PM | :20 | David | Corrine |
| | 7:24 PM | :39 | Corrine | David |
| | 7:26 PM | 1:59 | Corrine | David |
| | 7:26 PM | 11:28 | David | Corrine |
| Dec. 8 | 5:33 PM | :06 | David | Corrine |
| | 6:00 PM | 0:00 | Corrine | David |
| | 6:01 PM | 6:31 | David | Corrine |
| | 6:02 PM | 1:13 | Corrine | David |
| Dec. 9 | 8:25 AM | :26 | Corrine | David |



Tex. R. Civ. P. 272

# Tex. R. Civ. P. 272

**Rule 272 Requisites**

The charge shall be in writing, signed by the court, and filed with the clerk, and shall be a part of the record of the cause. It shall be submitted to the respective parties or their attorneys for their inspection, and a reasonable time given them in which to examine and present objections thereto outside the presence of the jury, which objections shall in every instance be presented to the court in writing, or be dictated to the court reporter in the presence of the court and opposing counsel, before the charge is read to the jury. All objections not so presented shall be considered as waived. The court shall announce its rulings thereon before reading the charge to the jury and shall endorse the rulings on the objections if written or dictate same to the court reporter in the presence of counsel. Objections to the charge and the court's rulings thereon may be included as a part of any transcript or statement of facts on appeal and, when so included in either, shall constitute a sufficient bill of exception to the rulings of the court thereon. It shall be presumed, unless otherwise noted in the record, that the party making such objections presented the same at the proper time and excepted to the ruling thereon.



Tex. R. Civ. P. 274

# Tex. R. Civ. P. 274

**Rule 274 Objections and Requests**

A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections. When the complaining party's objection, or requested question, definition, or instruction is, in the opinion of the appellate court, obscured or concealed by voluminous unfounded objections, minute differentiations or numerous unnecessary requests, such objection or request shall be untenable. No objection to one part of the charge may be adopted and applied to any other part of the charge by reference only.



**Tex. R. Civ. P. 278**

# Tex. R. Civ. P. 278

## Rule 278 Submission of Questions, Definitions, and Instructions

The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence. Except in trespass to try title, statutory partition proceedings, and other special proceedings in which the pleadings are specially defined by statutes or procedural rules, a party shall not be entitled to any submission of any question raised only by a general denial and not raised by affirmative written pleading by that party. Nothing herein shall change the burden of proof from what it would have been under a general denial. A judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question. Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; provided, however, that objection to such failure shall suffice in such respect if the question is one relied upon by the opposing party. Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment.

**Tex. R. Civ. P. 279**

# Tex. R. Civ. P. 279

## Rule 279 Omissions from the Charge

Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived. When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. If no such written findings are made, such omitted element or elements shall be deemed found by the court in such manner as to support the judgment. A claim that the evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after verdict, regardless of whether the submission of such question was requested by the complainant.

**Tex. Health & Safety Code § 166.039**

## § 166.039. Procedure When Person Has Not Executed or Issued a Directive and Is Incompetent or Incapable of Communication

*****

(b)  If the patient does not have a legal guardian or an agent under a medical power of attorney, the attending physician and one person, if available, from one of the following categories, in the following priority, may make a treatment decision that may include a decision to withhold or withdraw life-sustaining treatment:

(1)  the patient's spouse;

(2)  the patient's reasonably available adult children;

(3)  the patient's parents; or

(4)  the patient's nearest living relative.

*****

**Tex. Health & Safety Code § 711.002**

### § 711.002. Disposition of Remains; Duty to Inter

(a)  Except as provided by Subsection (l), unless a decedent has left directions in writing for the disposition of the decedent's remains as provided in Subsection (g), the following persons, in the priority listed, have the right to control the disposition, including cremation, of the decedent's remains, shall inter the remains, and are liable for the reasonable cost of interment:

(1)  the person designated in a written instrument signed by the decedent;

(2)  the decedent's surviving spouse;

(3)  any one of the decedent's surviving adult children;

(4)  either one of the decedent's surviving parents;

(5)  any one of the decedent's surviving adult siblings; or

(6)  any adult person in the next degree of kinship in the order named by law to inherit the estate of the decedent.